CRABTREE, J.T.C.
Plaintiff seeks review of defendant’s determination that plaintiff is subject to the New Jersey Corporation Income Tax *571 Act, N.J.S.A. 54:10E-1 et seq., for the calendar years 1976 and 1977. The determination is based upon income attributable to loans made by plaintiff to New Jersey residents. Plaintiff claims that the determination and any tax assessed pursuant thereto violate the Due Process and Commerce Clauses of the United States Constitution as plaintiff is engaged solely in interstate commerce with no contacts with the State of New Jersey.
The facts are fully stipulated pursuant to R. 8:8.....1(b).
Plaintiff is a Pennsylvania corporation with 23 offices, all located in that state. Plaintiff files its Pennsylvania corporate business tax return on a calendar year basis. It filed its 1976 and 1977 returns on or before June 30 of the following year.
Plaintiff’s sole activity is the making of consumer loans up to $5,000, payable up to 60 months, real estate loans and the purchase of installment contracts. Its income is derived exclusively from the financing charges attributable to its loans. While most of plaintiff’s loans are made to Pennsylvania residents, some loans are made to New Jersey residents. All loans made to New Jersey borrowers are effected through plaintiff’s Morrisville, Pennsylvania office. Plaintiff acquired that office on October 1,1976 from Guardian Loan Corporation, an unrelated corporation. Records reflecting the total loans outstanding to New Jersey residents do not exist for 1976. The estimated outstanding principal balance of loans to New Jersey borrowers at the end of 1977 was $600,348.
Plaintiff makes only consumer loans to New Jersey residents. It purchases no installment contracts from New Jersey residents or businesses located in this State, nor does it make real estate loans to residents of this State.
A prospective borrower, including a prospective New Jersey borrower, communicates with plaintiff’s Morrisville office either personally or by telephone. An application is prepared in that office. A credit check follows and, if the loan is approved, the applicant personally visits plaintiff’s Morrisville office to execute the loan documents and related papers. A check for the *572 loan proceeds is delivered to the customer at the Morrisville office and most loan payments, which are made monthly, are mailed to that location. Occasionally New Jersey residents will make payments at a New Jersey branch of CIT Financial Services, Inc., a sister corporation organized in Delaware and qualified to do business in New Jersey. Payments made at that branch are processed through the computer system of plaintiff’s parent corporation, CIT Financial Corporation. The computer is located in Miami, Florida.
If a monthly payment is not received within ten days after its due date, a written notice is mailed to the debtor from plaintiff’s Morrisville office. If payment is not forthcoming, additional mailings and telephone calls are made from that office. If delinquency continues, a representative of plaintiff will occasionally visit the debtor at the latter’s residence. Such visits to New Jersey default borrowers occur about twice monthly. If the borrower continues in default the account is referred to an Irvington, New Jersey, law firm for legal action. There were no New Jersey collection suits in 1976. Plaintiff instituted approximately 10-12 collection suits in New Jersey in 1977. Most of those actions involved delinquent accounts of less than $1,000 and the most frequent outcome was garnishment of the debtor’s salaries paid by New Jersey employers.
Plaintiff’s Morrisville office was staffed by six employees: a branch manager, an assistant manager, two customer service representatives and two service assistants. The managers were involved in supervision, training and other personnel functions as well as loan approval and business development. Customer service representatives were entrusted with loan processing, handling of past due accounts and collections. The service assistants performed essentially clerical functions.
Plaintiff communicates with customers by mail or by telephone from its Morrisville office or in person at that office. Plaintiff’s employees enter New Jersey only for the collection of delinquent accounts.
*573 None of plaintiff’s property is used by its personnel in pursuing collection efforts in New Jersey. However, plaintiff’s employees are reimbursed for travel expenses on a mileage basis.
Although many loans to New Jersey residents are unsecured, plaintiff sometimes requires a New Jersey customer to grant a security interest in consumer goods, household effects or automobiles. In this connection, Form UCC-1 Financing Statements are filed with New Jersey recording offices and, in the case of automobiles, with Division of Motor Vehicles in Trenton. All such filings are accomplished by mail from plaintiff’s Morrisville office.
Plaintiff has never taken a wage assignment as security for a loan to a New Jersey resident, nor has it ever made a loan in New Jersey secured by real estate or mobile homes.
If plaintiff is regarded as an independent legal entity, it is not qualified to do business in New Jersey, nor does it maintain bank accounts, offices or a mailing address in this State. If plaintiff is viewed as a separate legal entity, it has no officers, employees, agents or representatives whose offices are located in New Jersey (except for its collection attorneys), nor does it own or lease any real or tangible personal property here. Plaintiff is not listed in any New Jersey telephone directory. It has no billboards in this State.
For the years in issue, plaintiff paid Pennsylvania capital stock-loans-corporate net income taxes assessed against all plaintiff’s capital stock, loans and net income. The income sought to be taxed by New Jersey in this case is a portion of the same income previously taxed by the Commonwealth of Pennsylvania.
Plaintiff is a wholly-owned subsidiary of CIT Financial Corporation, a Delaware corporation qualified to do business in New York and Puerto Rico. The parent corporation owns several subsidiaries which conduct business at over 800 locations in the United States, including New Jersey. The parent provides funds for loans made by some of its subsidiaries, including plaintiff. CIT Financial Services Corporation, a West Virginia *574 corporation qualified to do business in New Jersey and Pennsylvania, and CIT Financial Services, Inc., a Delaware corporation qualified to do business in New Jersey, are also subsidiaries of the parent corporation.
Plaintiff’s Morrisville, Pennsylvania, office has a computer terminal which is connected to the computer service of the parent corporation. Payments on plaintiff’s loans made at other offices of plaintiff’s sister corporations are noted on this terminal and payments made to the Morrisville office on behalf of sister corporations are also processed through this terminal. In addition, plaintiff’s Morrisville office can communicate with offices of its sister corporations, including New Jersey offices of CIT Financial Services Corporation, through its terminal. For example, the Morrisville office can send messages to the Area Supervisor at a New Jersey office of CIT Financial Services Corporation or request information from a New Jersey office of CIT Financial Services, Inc. regarding a former customer.
The Branch Manager of plaintiff’s Morrisville branch reports to the Area Supervisor, an employee of CIT Financial Services Corporation. The Area Supervisor supervises branch managers in both New Jersey and Pennsylvania offices. During the years in issue he was located in plaintiff’s Morrisville office.
The Philadelphia region contains six areas, with 68 branches in New Jersey, Connecticut, Rhode Island, Maryland, Delaware and Pennsylvania. The Philadelphia regional office of CIT Financial Services Corporation is located in Marlton, New Jersey, and has a listing in New Jersey telephone directories. The General Supervisor, an employee of CIT Financial Services Corporation, is located in the Marlton office. He supervises the Area Supervisors and pays periodic visits to plaintiff’s offices and the offices of CIT Financial Services, Inc. located in his region.
On April 12,1978 plaintiff filed a Notice of Business Activities Report with defendant for the taxable year 1977. Such report was filed pursuant to the Corporation Business Activities Reporting Act, N.J.S.A. 14A:13-14 et seq. Plaintiff indicated on *575 the report that it received payments in 1977 from New Jersey residents or businesses located in New Jersey aggregating more than $25,000. Plaintiff specifically noted that it received payments from New Jersey resident borrowers on loans made by Pennsylvania branch offices. Plaintiff disclaimed liability under the Corporation Business Tax Act (N.J.S.A. 54:10A-1 et seq.) and the Corporation Income Tax Act (N.J.S.A. 54:10E-1 et seq.); it also disclaimed any obligation to obtain a certificate of authority to do business in New Jersey.
On May 16, 1978 an officer of the New Jersey Division of Taxation wrote to plaintiff acknowledging receipt of the aforementioned report and requesting additional information concerning plaintiff’s loans to New Jersey residents. Further correspondence ensued, characterized by the statement and reassertion of conflicting legal positions of the parties, followed in turn by conferences between plaintiff’s counsel and representatives of the Division of Taxation. Finally, on August 14,1979 defendant issued its final determination letter which is the subject matter of this litigation.
Plaintiff contends that the imposition of the New Jersey Corporation Income Tax, under the facts of this case, violates the Due Process Clause of the United States Constitution. U.SConst., Amend. XIV, § 1. Plaintiff also argues that the tax creates an unconstitutional burden upon interstate commerce. Those two claims are closely related. The tests for ascertaining Due Process and Commerce Clause violations are similar. National Bellas Hess, Inc. v. Dep’t of Revenue, 386 U.S. 753, 87 S.Ct. 1389, 18 L.Ed.2d 505 (1967).
In order for a state to tax income generated in interstate commerce the Due Process Clause of the United States Constitution requires a substantial nexus with the taxing state and a fair relationship to the services provided by that state. Commonwealth Edison Co. v. Montana, 453 U.S. 609, 101 S.Ct. 2946, 69 L.Ed.2d 884 (1981).
In addition, the Commerce Clause requires that the tax be fairly apportioned to local activities and that it be nondis *576 criminatory in its application to interstate commerce. Complete Auto Transit, Inc. v. Brady, 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed. 2d 326 (1977).
I find that plaintiff’s activities in New Jersey amounted to a substantial nexus with this State in the constitutional sense. In reaching this conclusion I rely upon the relationship prevailing among plaintiff and its sister corporations, CIT Financial Services Corp. and CIT Financial Services, Inc., both of which, as indicated above, are doing business in New Jersey. Ordinarily, the separate entities of two or more related corporations is recognized for tax purposes. See AVCO Fin. Services, etc. v. Taxation Div. Director, 4 N.J.Tax 349, 356 (Tax Ct. 1982). However, where the separate corporate entities of related corporations are not preserved in the conduct of their overall business, each corporation is regarded as the agent or alter ego of the other, so that the presence of one corporation in a state is the presence of the other. Minnesota Tribune Co. v. Comm’r of Taxation, 228 Minn. 452, 37 N. W.2d 737 (Sup.Ct.1949); State ex rel. Grinnell Co. v. MacPherson, 62 N.M. 308, 309 P.2d 981 (Sup.Ct.1957). Such is the case here. Plaintiff and its two sister corporations, all being under the common ownership of CIT Financial Corporation, were engaged in the consumer loan business. The corporate network was divided into areas and regions, irrespective of the separate corporate entities involved. The Area Supervisor employed by one of the three sister corporations exercised supervision over branch managers employed by plaintiff and the two sister corporations operating in New Jersey. The General Supervisor, located at the headquarters of the Philadelphia region in Marlton, New Jersey, although employed by CIT Financial Services Corp., exercised supervision over the Area Supervisors for the six areas within his region. It is reasonable to infer that at least some of those Area Supervisors were employed by other corporations in the CIT family.
There is thus a de facto merger of plaintiff with its sister corporations doing business in New Jersey. Those sister corporations are agents for, and the alter ego of, plaintiff. Their presence in New Jersey is the presence of plaintiff.
*577 The United States Supreme Court has indicated upon several occasions that satisfaction of the nexus requirement, i.e., a substantial economic presence in the taxing state, leads unavoidably to the conclusion that a fair relationship exists between such presence and services, benefits and protection provided by the taxing state. Western Live Stock v. Bureau of Revenue, 303 U.S. 250, 58 S.Ct. 546, 82 L.Ed. 823 (1938); Wisconsin v. J.C. Penney & Co., 311 U.S. 435, 61 S.Ct. 246, 85 L.Ed. 267 (1940); Northwestern States Portland Cement Co. v. Minnesota, 358 U.S. 450, 79 S.Ct. 357, 3 L.Ed.2d 421 (1959); Standard Pressed Steel Co. v. Washington Dep’t of Revenue, 419 U.S. 560, 95 S.Ct. 706, 42 L.Ed.2d 719 (1975). Our own Supreme Court has adopted the same principle. Roadway Express, Inc. v. Taxation Div. Director, 50 N.J. 471, 483, 236 A.2d 577 (1967), app. dism. for want of a substantial federal question 390 U.S. 745, 88 S.Ct. 1443, 20 L.Ed.2d 276 (1968).
In the present case it can fairly be said that plaintiffs extensive activities within New Jersey, albeit conducted in surrogate fashion, enjoyed the protection and services provided by state and local government, for which the State is entitled to something in return. See Airwork Service Division v. Taxation Div. Director, 2 N.J.Tax 329, 348-349 (Tax Ct. 1981), aff’d o.b. per curiam 4 N.J.Tax 532 (App.Div.1982).
Plaintiff also urges a constitutional infirmity in that a state may only tax income earned within its borders. The interest income on plaintiff’s consumer loans, it is argued, was earned in Pennsylvania, the domicile of the corporate lender. This same argument is advanced to demonstrate that, as a matter of statutory construction, the taxing statute has no application to plaintiff’s transactions, as N.J.S.A. 54:10E-2 purports to tax only income “derived from sources within New Jersey.”
To be sure, the Due Process Clause of the United States Constitution prohibits a state from taxing income earned beyond its borders. Hans Rees’ Sons, Inc. v. North Carolina ex rel. Maxwell, 283 U.S. 123, 51 S.Ct. 385, 75 L.Ed. 879 (1931); Connecticut General Life Ins. Co. v. Johnson, 303 U.S. 77, 58 S.Ct. *578 436, 82 L.Ed. 673 (1938); Evco v. Jones, 409 U.S. 91, 93 S.Ct. 349, 34 L.Ed.2d 325 (1977). It is also well settled that the taxable situs of intangibles (such as plaintiff’s loans receivable) is the domicile of the owner-creditor unless the intangible has been integrated- with a business carried in another state, in which case the taxable situs is in the latter state. Wheeling Steel Corp. v. Fox, 298 U.S. 193, 56 S.Ct. 773, 80 L.Ed. 1143 (1936); J.B. Williams Co., Inc. v. Glaser, 114 N.J.Super. 156, 275 A.2d 447 (App.Div.1971). Thus, the situs of an intangible and the place where income is earned are one and the same issue.
By reason of plaintiff’s extensive activities in this State, carried on through the agency of its sister corporations, with which plaintiff has been merged de facto, the interest income on plaintiff’s consumer loans to New Jersey residents was earned in New Jersey and the intangibles, i.e., principal and interest on the loans, acquired an independent situs in New Jersey. The interest income is thus amenable to New Jersey taxation. State Dep’t of Revenue v. J.C. Penney Co., Inc., 96 Wash.2d 38, 633 P.2d 870 (Sup.Ct.1981); J.B. Williams Co. v. Glaser, supra. For the same reasons the statute, N.J.S.A. 54:10E-2, applies to plaintiff’s New Jersey transactions as the interest income sought to be taxed is derived from New Jersey sources.
In view of the foregoing I conclude that plaintiff’s due process challenge has no merit.
Plaintiff’s claim that the taxing statute imposes an unconstitutional burden upon interstate commerce likewise fails.
As stated earlier, a tax is not an undue burden upon interstate commerce if it is fairly apportioned to local activities- and nondiscriminatory in its application to interstate commerce. Complete Auto Transit, Inc. v. Brady, supra. Fair apportionment is designed to avoid multiple taxation of the same transaction by two or more states. General Motors Corp. v. Washington, 377 U.S. 436, 84 S.Ct. 1564, 12 L.Ed.2d 430 (1964); Airwork Service Division v. Taxation Div. Director, supra. The tax is nondiscriminatory if it places the same burden upon intrastate commerce. McGoldrick v. Berwind-White Coal Mining Co., 309 U.S. 33, 60 S.Ct. 388, 84 L.Ed. 565 (1940).
*579 Although the parties have stipulated that the income which defendant seeks to tax is a portion of the same income previously taxed by Pennsylvania, I conclude that there is no multiple taxation here in the constitutional sense. The law of Pennsylvania, plaintiff’s domicile, permits apportionment of out-of-state income, pursuant to the widely used three-part formulary apportionment. 72 Pardon’s Pa.Stat.Ann. § 7401(3). Plaintiff was aware of its obligation to file a Notice of Business Activities Report with defendant pursuant to the Corporation Business Activities Reporting Act, N.J.S.A. 14A:13-14 et seq. Reportable business activities include the receipt of more than $25,000 from New Jersey residents or businesses located in New Jersey. N.J.S.A. 14A:13-15(e). Plaintiff filed its initial report on April 12, 1978, a date prior to the expiration of the period during which a protective refund claim could have been filed in Pennsylvania for calendar year 1976, the earlier of the two years involved.[1] The basis of the refund claim would have been the anticipated apportionment of plaintiff’s New Jersey source income in accordance with the aforementioned Pennsylvania tax apportionment statute.
Plaintiff has the burden of proving actual multiple taxation. Standard Pressed Steel v. Washington Dep’t of Revenue, supra; General Motors Corp. v. Washington, supra. The parties’ stipulation that plaintiff has paid Pennsylvania tax on the same income which defendant seeks to tax as New Jersey source income under the New Jersey statute cited above does not enable plaintiff to carry that burden. The Pennsylvania statute effectively permits exclusion of out-of-state income from Pennsylvania taxation, thereby eradicating the vice of duplicative taxation. Plaintiff cannot now be heard to claim multiple taxation which it could have avoided by the timely filing of protective refund claims in Pennsylvania.
*580 In any event, irrespective of the anticipated disposition of plaintiffs Pennsylvania refund claim, a nondomiciliary state may tax income derived from interstate commerce on an apportioned basis in accordance with the activities and contacts within the taxing state. Standard Oil Co. v. Peck, 342 U.S. 382, 72 S.Ct. 309, 96 L.Ed. 427 (1952); Braniff Airways, Inc. v. Nebraska State Bd. of Equalization and Assessment, 347 U.S. 590, 74 S.Ct. 757, 98 L.Ed. 967 (1953). Thus, when due process nexus is established in the nondomiciliary state, the latter, by definition, is extending benefits and protection to the corporate taxpayer. A power thus arises to tax income derived from sources within the nondomiciliary state. This power to tax may necessarily serve to limit the taxing power of the domiciliary state. Accordingly, if there be any validity to plaintiff’s complaint against duplicative taxation, it should be addressed to the taxing authorities in Pennsylvania, not to a fairly apportioned New Jersey tax. See Moorman Mfg. Co. v. Bair, 437 U.S. 267, 98 S.Ct. 2340, 57 L.Ed.2d 197 (1978).
As for the nondiscriminatory requirement, the statute contemplates a fair and reasonable allocation of plaintiff’s entire net income reasonably attributable to New Jersey, thereby placing plaintiff on the same footing with domestic corporations subject to tax under the Corporation Business Tax Act, N.J.S.A. 54:10A-1 et seq.[2] The taxing statute in issue is not discriminatory.
Plaintiff’s final argument is addressed to the alleged constitutional infirmity of the Corporation Business Activities Reporting Act, N.J.S.A. 14A:13-14 et seq. Plaintiff contends that the act’s sanction for noncompliance[3], i.e., the prohibition *581 against maintaining any action in the New Jersey courts, is violative of both the due process and commerce clauses. The case of Associates Consumer Discount Co. v. Bozzarello, 149 N.J.Super. 358, 373 A.2d 1016 (App.Div.1977), is dispositive of plaintiff’s arguments. There, the Appellate Division upheld the act against the same constitutional challenges advanced in the instant case, saying:
The statute is not a taxing measure. It is essentially an information gathering measure. Its clear purpose is to enable the Division of Taxation to obtain pertinent data from any foreign corporation which carries on an activity or owns or maintains property in this State, but which has not obtained a certificate of authority to do business in New Jersey, to the end that a proper determination may be made as to whether such corporation is subject to any State tax.
We discern no constitutional infirmity in either the notice requirement of the Act or the sanctions imposed therein for failure to file. These are entirely reasonable means designed to achieve an essential state purpose — the strengthening of the enforcement of its tax laws, [at 362-363, 373 A.2d 1016]
Plaintiff submits a lengthy critique of Bozzarello and urges this court to disregard it because it was decided incorrectly. I am not at liberty to do so. Trial courts are free to disagree with appellate opinions; they are not free to disobey. Reinauer Realty Corp. v. Paramus, 34 N.J. 406, 169 A.2d 814 (1961); Dunham’s & Co. v. Dzurinko, 125 N.J.Super. 296, 310 A.2d 515 (App.Div.1973).
I conclude from the foregoing that the Corporation Income Tax Act is constitutional in its application to plaintiff’s activities in New Jersey during the years under review. I conclude, further, that the Corporation Business Activities Reporting Act is also constitutional in its application to plaintiff for the years in issue. Finally, I conclude that the interest income accruing on consumer loans made by plaintiff to New Jersey residents *582 constitutes income derived from sources within New Jersey within the purview of the Corporation Income Tax Act. Judgment will be entered in accordance with this opinion.

The statute of limitations on refund of the Pennsylvania corporate net income tax is two years measured from the date of payment of the tax. 72 Purdon’s Pa.Stat.Ann. § 503.

The income of a domestic corporation is eligible for allocation if the corporation maintains a regular place of business outside New Jersey. N.J. S.A. 54:10A-6. The same three-factor formula is used. Likewise, defendant has the same authority to employ alternate allocation methods. Cf. N.J.S.A. 54.-10A-8 with N.J.S.A. 54:10E-8.

N.J.S.A. 14A:13-20(a) provides:
*581 No foreign corporation carrying on any activity or owning or maintaining any property in this State which has not obtained a certificate of authority to do business in this State and disclaims liability for the corporate business tax and the corporation income tax shall maintain any action or proceeding in any State or Federal court in New Jersey, until such corporation shall have filed a timely notice of business activities report.